UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RINALDO DEL GALLO, III, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06cv30063-MAP ) |
| ROGER PARENT, UNITED STATES POSTAL SERVICE POSTMASTER, et al. | ) ) ) |
| Defendants. | ) |

## DEFENDANTS' CONSOLIDATED MEMORANDUM

## PRELIMINARY STATEMENT

The defendants, Pittsfield Postmaster Roger Parent and the Pittsfield Post Office, submit this consolidated memorandum in support of their motion for summary judgment and in opposition to the plaintiff's motions for summary judgment and to certify questions to the Massachusetts Supreme Judicial Court. The plaintiff's attack on the United States Postal Service's ("USPS" or "Postal Service") ban on electioneering on Postal Service property is based on the erroneous premise that the property is a traditional public forum for First Amendment activities. Courts have held repeatedly that United States Post Offices are nonpublic forums because they are dedicated to postal business and expressive activity allowed on the property is incidental to that use. As a result, the Postal Service may constitutionally limit speech on its property as long as the restrictions are reasonable and not designed to suppress a particular point of view.

## PROCEDURAL BACKGROUND

The plaintiff, Rinaldo Del Gallo ("Del Gallo"), initially brought this action before the single justice session of the Massachusetts Supreme Judicial Court, challenging the

constitutionality of a United States Postal Service ("USPS" or "Postal Service") regulation governing conduct on Postal Service property. The plaintiff sued (1) Pittsfield Postmaster Roger Parent; (2) the Pittsfield Post Office;[1] and (3) Pittsfield Police Chief Anthony Riello. Following removal to this Court, Del Gallo requested remand to state court or, alternatively, an immediate hearing on his request for injunctive relief. On April 28, 2006, the court denied injunctive relief finding that the plaintiff had failed to show a likelihood of success on the merits.

On November 6, 2006, Riello filed a motion for judgment on the pleadings, which the court allowed. The case has continued against the federal defendants and is now before the court on cross motions for summary judgment and the plaintiff's motion to certify questions to the Massachusetts Supreme Judicial Court.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1. In March, 2006, the plaintiff was stopped from gathering signatures for his election to public office on a Postal Service sidewalk because postal regulations bar political campaigning on postal property. Exhibit 1, Declaration of Jean Roger Parent; 39 C.F.R. § 232.1(h). The Pittsfield Post Office, located at 212 Fenn Street, is bordered on two sides by city sidewalks. Its front door is accessed by a Postal Service sidewalk abutting the post office parking lot. The Postal Service sidewalk provides customer access to the Post Office and is not a general thoroughfare. Id.

2. Congress enacted Postal Reorganization Act in 1970 to improve and modernize the country's postal system. The Postal Reorganization Act created the United States Postal

---

[1] It is not clear whether the plaintiff intended to name the Pittsfield Post Office as a party. In any event, neither the Postmaster nor the Post Office are proper defendants and the actions should be brought against the United States Postal Service.

Service as an independent establishment of the executive branch of the federal government. The Postal Service is not supported by tax dollars, but is funded through operations. As a result of the Postal Reorganization Act, the Postal Service operates like a business. The Postal Service may purchase, lease, and dispose of property; it must meet and manage its budget and periodically raise rates to cover its costs; and it must generate revenue through the sale of its products and services. Exhibit 2, Declaration of Frederick J. Hintenach, ¶ 4.

3. In recent years, the Postal Service has seen decreasing revenue growth and increasing delivery points due to population increases. These factors, coupled with increased competition from private delivery companies and electronic communications alternatives, have caused the Postal Service to make customer service one of its top priorities. Exhibit 2, ¶ 5.

4. The Postal Service serves approximately 8.5 million customers per day and employs approximately 100,000 employees in retail operations nationwide. Nearly all members of the public who visit post offices do so in order to conduct postal business. Because of the Postal Service's need to generate its operating revenue through the sale of its products and services, customers are vitally important to the Postal Service's business. Thus, Retail Operations must strive to furnish the highest quality customer service possible by providing postal customers easy access to its products and services. This focus on customer service is reflected in Retail Operations' current programs. For example, the Postal Service conducts a Mystery Shopper Program, where we judge our customers' experience in our lobbies and how well they are served by the Postal Service. Exhibit 2, ¶ 6.

5. The use of Postal Service property is governed by regulations, which appear at 39

C.F.R. § 232.1. These regulations are designed to promote the Postal Service's business operations and enhance customer service. The regulations date back to at least 1972, shortly after enactment of the Postal Reorganization Act. Exhibit 2, ¶ 7.

6. The Postal Service amended its regulations in 1978 to prohibit campaigning for election to any public office. Exhibit 3, 43 FR 38824 (August 31, 1978). The stated purpose of the prohibition was to "prevent abuses and to preclude any appearance of partisan endorsement or preference." Exhibit 2, ¶ 8; Exhibit 3.

7. The electioneering prohibition covers all aspects of political activity, including soliciting signatures to place a candidate's name on an election ballot. Exhibit 2, ¶ 9.

8. In June 1998, the Postal Service again amended its regulations to prohibit soliciting signatures on postal property. This amendment was in response to widespread customer complaints, many of which related to signature-gathering activities on postal property. The substance of the complaints was that signature solicitation disturbs and impedes customers' use of postal facilities and, thus, access to postal services. Also, until the enactment of the broader ban on signature solicitation, postmasters and station managers had the difficult task of determining whether or not a given signature solicitation involved campaigning for election to public office because the campaigning prohibition did not cover signature solicitation for other purposes. Exhibit 2, ¶ 10.

9. The prohibition against signature solicitation was drafted to be neutral without regard to the nature of the issues or the viewpoints of the petitioners. Exhibit 2, ¶ 11.

10. Persons wishing to solicit signatures for petitions that are not related to electioneering may stand on postal property and pass out informational leaflets or hold up a sign containing pertinent information about their cause and inviting postal customers to go to a

nearby location, such as a nearby city sidewalk, to sign their petition. However, such actions are not allowed if related to political campaigning. Exhibit 2, ¶¶ 12-13.; Exhibit 4, Postal Bulletin 22119 (Jan. 8, 2004).

11. On December 1, 2005, the regulation was again amended to, among other things, clarify that the prohibitions in § 232.1(h) did not apply to USPS sidewalks "that surround the outer perimeters of Postal Service property and are indistinguishable from adjacent municipal or other public sidewalks." Exhibit 5, 70 FR 72078-01.

## ARGUMENT

### I. FEDERAL LAW GOVERNS ACTIVITY ON POSTAL PROPERTY

Contrary to the plaintiff's argument, the Massachusetts Constitution has no place in the analysis of the legality of the Postal Service regulation. The Supremacy Clause of the United States Constitution specifies that "[t]his Constitution and the laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby." U.S.Const. Art. VI, Cl. 2. "Federal statutes thus prevail over local regulations when the two collide or are otherwise inconsistent in their effects." Don't Tear it Down, Inc. v. Pennsylvania Ave. Dev. Corp., 642 F.2d 527, 533 (D.C. Cir. 1980) (citations omitted). Federal regulations "have no less preemptive effect than federal statutes." Fidelity Fed. Sav. & Loan. Assn't v. de la Cuesta, 458 U.S. 141, 153 (1982). Accordingly, there is no basis for certifying any questions in this case to the Massachusetts Supreme Judicial Court.

### II. POSTAL REGULATIONS PROHIBIT THE PLAINTIFF'S SOLICITATION OF SIGNATURES FOR ELECTION TO PUBLIC OFFICE

The Postal Service's Conduct on Postal Property regulations prohibit the plaintiff's solicitation of signatures for his political campaign. The regulations broadly ban certain

5

activities, including campaigning for election to public office. 39 C.F.R. § 232.1(h).

Specifically, the regulations provide:

> (1) Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, soliciting and vending for commercial purposes (including, but not limited to, the vending of newspapers and other publications), displaying or distributing commercial advertising, collecting signatures on petitions, polls or surveys (except as otherwise authorized by Postal Service regulations), are prohibited.

The plaintiff's characterization of three narrow exceptions to this broad prohibition as allowing a variety of speech "without limit," is misguided. The regulations carve out three specific exceptions. The first exception is for activities performed under contract with the Postal Service or pursuant to the Randolph-Sheppard Act, which requires that blind individuals be allowed to operate vending facilities on all federal property. 39 C.F.R. § 232.1(h)(1)(i). The second exception permits posting employee notices on bulletin boards. 39 C.F.R. § 232.1(h)(1)(ii). The third exception allows limited solicitation of contributions from federal employees. 39 C.F.R. § 232h.1(1)(iii). None of these exceptions permit solicitation of customers.

The plaintiff's claim that the regulations allow a "seemingly absurd" array of activities, including "a menagerie of camels, elephants, dogs, horses and other circus animals" shows that the plaintiff has not read the rules. Among other things, the regulations ban all animals, except for animals used by individuals with disabilities, as well as disorderly conduct. 39 C.F.R. § 232.1(e) & (j).

Finally, the plaintiff is mistaken in his claim that the regulations permit him to request signatures on Postal Service property so long as the actual signature collection is performed off-

premises. The Postal Service Bulletin[2] and the IRI case[3] referenced by the plaintiff address solicitation of signatures and not political campaigning. The ban on electioneering is not limited to signature collection but covers any activity that is related to a campaign for election to public office, whether it be distributing literature, asking individuals to sign a petition off-site, or collecting signatures. The plaintiff's activities fall squarely within the broad electioneering ban. Accordingly, he cannot solicit signatures on postal property even if the actual signing occurs off-premises.

## III. THE REGULATION PASSES CONSTITUTIONAL MUSTER

### A. Introduction

The starting point for a First Amendment challenge to regulation of speech on government property is to determine whether the property is a public forum or a nonpublic forum. If the forum is public, any speech restriction must withstand strict scrutiny. If nonpublic, the restriction need only be reasonable and viewpoint neutral. Ridley v. Massachusetts Bay Transit Authority, 390 F.3d 65, 75-82 (1st Cir. 2004); New England Regional Council of Carpenters v. Kinton, 284 F.3d 9, 20 (1st Cir. 2002). See Perry Educational Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44 (1983).

Government-owned property falls into three broad categories. First, there is the traditional public forum, which is an area that by long tradition has been open to the public for

---

[2] The Postal Service Bulletin did not change the regulation, but clarified that the regulation did not bar an individual from passing out leaflets or holding a sign directing interested individuals to an off-site area to sign a petition.

[3] IRI v. U.S. Postal Serv., 417 F.3d 1299, (D.C. Cir. 2005).

"assembly and debate." Perry, 460 U.S. at 45. Municipal streets and public parks are classic examples of traditional public fora. Id.

Second, the government can designate an area as a place for use by members of the public wishing to engage in First Amendment activity. A "designated public forum" is property that has not been traditionally open to the public for expressive activity but which the government has opened "for use by the public as a place for expressive activity." Id. at 45. "Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum." Id. at 46. "A subcategory of the designated public forum is the 'limited public forum' where the state allows only certain categories of speech." Id. at 47-48. See also Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829 (1995). In a limited public forum, the state may discriminate on the basis of content, in order to "preserve the purpose of that limited forum." Rosenberger, 515 U.S. at 829-830.[4]

Finally, government-owned property may be a nonpublic forum. Perry, 460 U.S. at 46. In such cases, the government may restrict speech "so long as the regulation is reasonable and not an effort to suppress expression because public officials oppose the speaker's view." Id.

### B. The Postal Service Sidewalk is a Nonpublic Forum

In this case, the sidewalk between the Pittsfield Post Office building and its parking lot is a nonpublic forum. Unlike a city sidewalk, which is a public thoroughfare "to facilitate the daily commerce and life of the neighborhood or city," the postal sidewalk "leads only from the parking area to the front door of the post office" and "was constructed solely to provide for the passage

---

[4] The First Circuit equates "limited public forum with non-public forum." Ridley, 390 F.3d at 76,

of individuals engaged in postal business." United States v. Kokinda, 497 U.S. 720, 727-28 990). See Exhibit 1.

In Kokinda, the plaintiffs claimed that a similar sidewalk was a traditional public forum, arguing that it was indistinguishable from the municipal sidewalk across the parking lot. The Supreme Court's plurality disagreed.

> This argument is unpersuasive. The mere physical characteristics of the property cannot dictate the forum analysis. . . [In Greer], [t]he presence of sidewalks and streets within the [military] base did not require a finding that it was a public forum.

Kokinda, 497 U.S. at 727. Not every area on government property that resembles a street, park or sidewalk must be accorded the status of a public forum. Id. at 728-29. Rather, "[a]s we recognized in Grace, the location and purpose of a publicly owned sidewalk is critical to determining whether such a sidewalk constitutes a public forum." Kokinda, 497 U.S. at 728-29, citing United States v. Grace, 461 U.S. 171 (1983).

In the case of the sidewalk running between the post office building and its parking lot, the Kokinda plurality held that the limited discourse allowed on the walkway did not transform the area into a public forum. "The Postal Service has not expressly dedicated its sidewalks to any expressive activity." Id. at 729. Although the Postal Service has allowed individuals to engage in some expressive activities, "a practice of allowing some speech activities on postal property does not add up to the dedication of postal property to speech activities." Id. "The government does not create a public forum . . . by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." Cornelius, 473 U.S. at 802.

The view of the Kokinda plurality is consistent with every court of appeals to have decided the public forum status of postal property, with the exception of the Fourth Circuit in

9

Kokinda, which was reversed by the Supreme Court. Before Kokinda, the Ninth Circuit in Monterey County Democratic Central Comm. v. United States Postal Service, 812 F.2d 1194 (9th Cir. 1987), held that a covered walkway adjacent to a post office was a nonpublic forum because it was separated from the nearby municipal sidewalks. Id. at 1198. "The isolated nature of the building and the surrounding walkway indicate to all who approach that the walkway services postal patrons entering the building and that it is not a thoroughfare for passers by intent on other errands." Id. at 1197. The Ninth Circuit's conclusion was not altered by the fact that the Postal Service allowed expressive activities for certain groups. The court concluded that the guidelines established a limited public forum for those groups. Since the plaintiff was not in the same category as the groups allowed to engage in expressive activity, the limited public forum was not open to him. Id. at 1198.

Similarly, prior to Kokinda, the Third Circuit held that the walkways near the post office entrances where the defendants had been arrested were not a traditional public forum because they were "set well back from public thoroughfares" and "could not be confused with municipal sidewalks." United States v. Bjerke, 796 F.2d at 648-49.

> The walkways in question were not dedicated to serve the traditional functions of streets or parks, but rather for the particular function of accommodating post office patrons on official business, unlike the urban sidewalks in Greer. Indeed, it can hardly be doubted that the function of Postal Service property is to facilitate the provision of efficient postal service, and not to provide a platform for political advocacy. See 39 U.S.C. § 101(a)(1982).

Id. at 649. The fact that USPS may allow selective access to its property "does not manifest an intent to designate an area a public forum for all expressive purposes." Id. When there was no evidence of intent to open up these areas for unlimited expressive activities, the court held that the area was a nonpublic forum. Id. at 650.

Similarly, the Eleventh Circuit held that postal properties were nonpublic because they were "set back from the public road and were designed so that patrons could drive from the city street, park in the postal parking lot, and walk from the parking lot to the building on a connecting walkway." United States v. Belsky, 799 F.2d 1485, 1487 (11th Cir. 1986).

> [U]nder applicable Supreme Court precedent, the ingress and egress walkways to the post office buildings are a nonpublic forum. These walkways are intended to accommodate traffic to and from the post office for the conduct of postal business and have not traditionally been sites for expressive conduct. These sidewalks are distinguishable from the public sidewalks surrounding the buildings, which remain open for expressive conduct.

Id. at 1489 (footnotes omitted).

Following Kokinda, the Third Circuit revisited the issue of the status of postal property outside a post office and held that an outside postal walkway was a nonpublic forum. Paff v. Kaltenbach, 204 F.3d 425, 433 (3d Cir. 2000). The Second Circuit reached a similar conclusion in Longo v. United States Postal Service, 983 F.2d 9 (2d Cir. 1992), holding that "the interior postal walkway here involved, which was constructed solely for the purpose of assisting patrons of the post office to get from the parking lot to the front door of the post office, is a nonpublic forum." Id. at 11. Longo followed the plurality opinion in Kokinda, which had been adopted by several other courts of appeals. Id. at 11-12.

While the First Circuit has not specifically addressed the status of a Postal Service sidewalk, its forum analysis in other contexts demonstrates that if faced with the question, it would join the Kokinda plurality and the other circuits. For example, in Ridley, 390 F.3d at 82, the First Circuit held that the Boston area transit system was a nonpublic forum even though it allowed commercial advertising on its buses. Similarly, in New England Regional Council of Carpenters v. Kinton, 284 F.3d 9, 22-23 (1st Cir. 2002), the court held that the Fish Pier, owned

11

and operated by the Massachusetts Port Authority, was a nonpublic forum even though the public entered the premises for a variety of purposes, including to reach conference centers and restaurants.

In a tortured effort to bring the Postal Service sidewalk under the public forum umbrella, the plaintiff argues that the range of speech allowed at the Pittsfield Post Office Postal Service is "limited only by the imagination's ability to imagine." (Plaintiff's Memorandum at p. 10). The plaintiff has not provided any evidence supporting his wildly speculative claim. Moreover, the Supreme Court has made clear that "[t]he government does not create a public forum by inaction." Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U.S. 788, 802 (1985). While the Postal Service may allow, through inaction, some speech on its property, "the government does not create a public forum by. . . permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." Kokinda, 497 U.S. at 584. The Postal Service's sparing use of its authority to regulate activities on its property, responding to specific issues as they arise, does not transform the interior sidewalk into a public forum.

The plaintiff also is mistaken in his claim that five of the nine justices in Kokinda considered an interior postal sidewalk to be a public forum. (Plaintiff's Mem. at 9). The Kokinda plurality of four found that the sidewalk was nonpublic. While Justice Kennedy's concurrence recognized that there was "a "powerful argument" that the property in question "is more than a nonpublic forum," he specifically concluded that "[i]t is not necessary, however, to make a precise determination whether this sidewalk and others like it are public or nonpublic forums." Kokinda, 497 U.S. at 738.

Finally, the plaintiff's speculation about the Supreme Court's reason for remanding Longo is unpersuasive. (Plaintiff's Mem. at 11). In Longo, the plaintiff sought to gather

12

signatures to place his name on the ballot on a postal walkway adjacent to the Post Office building. In its initial decision, the Second Circuit upheld that the Postal Service regulation, finding it viewpoint neutral and "sufficiently content neutral to pass scrutiny as a reasonable time, place and manner restriction." The court did not categorize the walkway as a public or nonpublic forum. Longo, 953 F.2d 790 (2d Cir. 1992) ("Longo I"). The Supreme Court vacated the decision and remanded the case for consideration in light of Burson v. Freeman, 504 U.S. 191 (1992), which held that prohibitions on political speech were not content neutral even if they were viewpoint neutral. Recognizing that its earlier decision could not survive Burson, the court reached the issue it had avoided in its prior decision, namely the categorization of the nature of the forum. Following the Kokinda plurality, the court held that the postal walkway that provided access to the post office was not a public forum. The court went on to uphold the regulation as reasonable. Longo, 983 F.2d 9 (2d Cir. 1992) ("Longo II").

In sum, the plaintiff has provided no basis for this court to reject the overwhelming weight of authority finding postal walkways to be nonpublic.

### C. The Regulation is Reasonable

It is black letter law that restrictions on First Amendment activity occurring in a non-public forum are valid "'if they are "reasonable" and "not an effort" to suppress expression merely because public officials oppose the speakers.'" ISKCON v. Lee, 505 U.S. 672, 687 (1992). See also Ridley, 309 F.3d at 65 (restrictions on speech in a nonpublic forum must be viewpoint neutral and reasonable in light of the purposes served by the forum). The regulation need not be the most reasonable, or the only reasonable manner of restricting activity, nor must it

be narrowly tailored to serve a significant government interest. See, e.g., Cornelius, 473 U.S. at 808.[5]

In this case, the regulation banning electioneering readily satisfies the standard for a speech restriction in a nonpublic forum. The regulation is viewpoint neutral and not designed to suppress speech because USPS opposes the message. The prohibition applies to all political candidates, regardless of party or office. Moreover, as Longo held, the regulation is reasonably related to the mission of the Postal Service and its concern for avoiding political entanglement. Exhibit 2, ¶¶ 8-9.

> If campaigning for public office on postal property were not prohibited, the Postal Service surely would be beset by requests from eager politicians competing for time and space in the most strategic locations possible, such as the postal walkway involved in this case. Postmasters therefore would be hard pressed to avoid the sort of embroilment in partisan politics that Congress tried to prevent when it reorganized the Postal Service in 1970. . . Moreover, on several occasions the Supreme Court has recognized that the avoidance of partisan entanglement or the appearance of political favoritism is a valid justification for restricting First Amendment speech activities.

Longo I, 953 F.2d at 794-95.[6]

Comparing the Postal Service's rationale for the regulation to governmental interests deemed reasonable in other cases, Longo held that the "Postal Service's interest in avoiding

---

[5]The plaintiff misreads Initiative and Referendum v. U.S. Postal Service, 417 F.3d 1299, 1307-08 (D.C. Cir. 2005) ("IRI"), as supporting his claim that the regulation does not meet the reasonableness test. The plaintiff cites the portion of the IRI that examined the regulations under the level of scrutiny applied to time, place and manner restrictions in public forums, which is a different standard than the reasonableness standard applied to viewpoint neutral restrictions in nonpublic forums.

[6]The government is quoting from the first Longo decision because it has a fuller discussion of the rationale for the regulation. On remand, the Second Circuit endorsed the analysis in the first decision. 983 F.2d at 12.

partisan political entanglement and the appearance of political favoritism is at least as significant as the governmental interests in 'preventing visual blight,' in its cities . . . in 'maintaining [public] parks . . . in an attractive and intact condition' . . . and in 'avoiding congestion and maintaining orderly movement' of persons using a public forum. Id. at 795 (citations omitted). Cf. Kinton, 286 F.3d at 24-25 (Massport's concern for pedestrian safety and traffic flow provides reasonable basis for ban on leafleting activity).

While the First Circuit has not specifically addressed the Postal Service's regulation, the court has recognized maintaining political impartiality as a acceptable justification for restricting speech. Berner v. Delahanty, 129 F.3d 20, 27 (1st Cir. 1997). In Berner, the plaintiff, a lawyer, while seated in the courtroom, wore a button expressing an opinion about an upcoming ballot initiative. The judge asked him to remove the button and indicated his plan to bar lawyer from wearing political buttons in his courtroom. The court upheld the judge's action as a reasonable means to limit the "appearance of political partiality." Citing Greer v. Spock, 424 U.S. 828 (1976), which upheld a ban on political speeches on military bases, the court stated:

> Judge Delahanty's order compelling Berner to remove his political-advocacy button while in the courtroom fits comfortably within this apolitical paradigm. . . [The judge's] explanation [of the reason for his order] is entirely consistent with a desire to ensure that the courtroom remains free from the appearance of political partisanship.

Id. at 27. Even though the political button "caused no commotion, [the] mere wearing of a pin that advocates a position regarding a hotly contested political issue raises the specter of

politicalization and partiality." Id. Noting that the ban was viewpoint neutral, the court found it reasonable. Id. A similar rationale supports the Postal Service's prohibition on electioneering.[7]

### D. The Plaintiff's Equal Protection Argument Fails

The plaintiff argues that the regulation violates the Equal Protection Claus because the Postal Service has created a limited public forum and has opened the forum in a discriminatory manner. That argument rests on a faulty understanding of a limited public forum. In a limited public forum, the state may constitutionally allow certain categories of speech while disallowing others as long as the distinction is reasonably designed to "preserve the purpose of that limited forum." Rosenberger, 515 U.S. at 829-830. See also Ridley, 390 F.3d at 76 (holding that the reasonableness standard applies to the limited public forum). In this case, the Postal Service has not discriminated among political candidates, but has uniformly prevented all political candidates from campaigning on its property. The distinction is reasonably related to the Postal Service's commercial focus on generating revenue and serving its customers and remaining above the fray of partisan politics. See Exhibit 2.

---

[7]The analysis is the same for a limited public forum. Ridley, 390 F.3d at 76. In the event the court finds the sidewalk to be a public forum, the regulation also meets strict scrutiny in light of the compelling interest in avoiding entanglement in partisan politics and in the appearance of political favoritism and the narrow focus of the regulation.

## CONCLUSION

For the foregoing reasons, the court should deny the plaintiff's motions for summary judgment and to certify questions to the Massachusetts Supreme Judicial Court and grant judgment in the defendants' favor.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/Karen L. Goodwin
_____
KAREN L. GOODWIN
Assistant U.S. Attorney
1550 Main Street
Springfield, MA 01103
(413) 785-0235

Dated: April 24 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/Karen L. Goodwin
_____